## No. 11,619.

## BAKER *v.* SOCKWELL.

Decided October 4, 1926.   Rehearing denied December 6, 1926.

Action to enforce collection of promissory notes. Judgment for defendant.

*Cause Remanded for Dismissal.*

*On Application for Supersedeas.*

1. FRAUD—*Estoppel.* The proposition that one is estopped to assert his own fraud in defending an action on contract is correct if the fraud be alleged or evidence thereof offered to obtain affirmative relief, but otherwise if the allegation or proof be for the purpose of foreclosing any relief to either party to the fraud.

2. CONTRACTS—*Illegal Consideration—Public Policy.* Whenever a contract or other transaction is illegal, and the parties are in pari delicto, considerations of public policy require that the law aid neither, and there is no distinction between law and equity in the applicability of the rule.

3. COURTS—*Decisions.* Where the decisions of an appellate court are in conflict, the latest governs.

4. CONTRACTS—*Illegal or Immoral Consideration.* Where it appears that a contract is based upon illegal or immoral considerations, the parties thereto being in pari delicto, the courts of Colorado are closed against any attempt of either to obtain any relief under the contract or its assignment or to establish any rights growing out of it.

5. APPELLATE PRACTICE—*New Parties.* There is no rule justifying making one a party to an appellate proceeding after the case has been finally submitted for determination.

*Error to the District Court of the City and County of Denver, Hon. Charles C. Sackmann, Judge.*

Messrs. MORRISSEY, MAHONEY & SCOFIELD, Mr. HAROLD G. KING, for plaintiff in error.

Mr. CHARLES E. FRIEND, for defendant in error.

*En banc.*

MR. JUSTICE BURKE delivered the opinion of the court.

PLAINTIFF in her complaint alleges that on July 1, 1921, Paul Couch sold a drug store to Isaac H. Caudle and received in consideration forty-four promissory notes of that date, each for $75, payable to the order of said Couch and due one each month thereafter. That on December 1, 1921, the unpaid notes of said series, numbered 21 to 44 consecutively and inclusive, were assigned to her, and that she is now the owner and holder thereof. She brought this action to enforce said notes against the store in question in the hands of defendant Sockwell by having him declared a receiver thereof under the Bulk Sales Law because of noncompliance with that act in the purchase of said store from Caudle. A demurrer for want of facts was sustained to this complaint. An amended complaint containing the same and other allegations was tendered and objections to its filing sustained. Thereupon plaintiff elected to stand and defendant had judgment, to review which plaintiff brings error and asks a reversal on her application for supersedeas. We hereinafter refer to the parties as they appeared in the trial court.

This cause must be disposed of now on the grounds of public policy. In *Baker v. Couch,* 74 Colo. 380, 221 Pac. 1089, Paul Couch brought replevin against Alma Baker to recover thirty-five promissory notes executed by Isaac H. Caudle, payable one each month, dated July 1, 1921, each for the sum of $75, proceeds of a drug store sold by Couch to Caudle. These notes she alleged she had received as a gift from Couch. Couch had judgment for the notes or their value. Baker brought error and that judgment was set aside with directions to dismiss the action. Defendant here asserts in his brief that these are the same notes, and this plaintiff does not deny. The question involved being one of public policy, and the administration of justice being of paramount importance, we will resort to an inspection of the record in *Baker v. Couch, supra,* to determine the fact. Such inspection discloses that the notes and persons are identical. In the last mentioned case we said: "The consideration, and the sole consideration, for the original delivery of the notes to defendant,   *   *   *   as repeatedly disclosed by the pleadings, expressly testified to by defendant (Alma Baker) and not denied, and suggested by all the other evidence in the case, was past, present and future illicit relations between the parties. Under such circumstances no recovery could be had. The law is well settled and the authorities practically unanimous   *   *   *."

But because, in the instant case, Baker can support her complaint without disclosing the nature of the transaction by which she obtained the notes, it is urged that the consideration for the assignment is no defense. To support that position *Hubbard v. Mulligan,* 13 Colo. App. 116, 57 Pac. 738 is cited. We do not so read the opinion. It appears at page 127 thereof where this subject is discussed, that the illegal contract referred to was not the one sued upon, but one out of which it grew. As to the latter it is said: "No principle is better settled than that no action can be brought on the contract it-

self, whether the consideration be immoral or whether it be prohibited by some enactment."

It is also held in the Hubbard case that one may not defend on the ground that the contract sued upon was executed by the parties for the purpose of perpetrating a fraud upon another, on the ground that a man is estopped to assert his own fraud. The proposition is correct, if the fraud be alleged or evidence thereof offered for the purpose of obtaining affirmative relief, but otherwise if the allegation or proof be for the purpose of foreclosing any relief to either party to the fraud. The Hubbard case, on this point is contrary to the express holding of this court, en banc, in *Armstrong v. Gresham*, 73 Colo. 13, 213 Pac. 114. The same rule is laid down in *Dougherty v. Seymour*, 16 Colo. 289, 26 Pac. 823. We there sustained a judgment denying recovery under a lease of premises to be used as a bawdy-house, on the ground that such a business was illegal and against public policy, saying: "It is true the contract is prima facie good, but extrinsic evidence shows it to have been tainted with moral turpitude, which overthrows its prima facie appearance and exposes its baseness and illegality."

In *Vincent v. Moriarty*, 31 N. Y. App. Div. 484, the court held plaintiff to the allegations of her original complaint, notwithstanding its later amendment, and reversed a judgment based in part upon an immoral consideration, saying: "It is difficult to see how it was possible for any suitor to ask the assistance or expect the approval of a court of equity in the enforcement of such a contract, * * *. The plaintiff mistakes the disposition and temper of this tribunal, which will neither assist in enforcing such a contract nor anything which grows out of or is dependent upon it."

That opinion quotes Pomeroy who lays down the general rule as follows: "Whenever a contract or other transaction is illegal, and the parties thereto are, in con-

templation of law, in pari delicto, it is a well-settled rule, subject only to a few special exceptions depending upon other considerations of policy, that a court of equity will not aid a particeps criminis, either by enforcing the contract or obligation while it is yet executory, nor by relieving him against it, by setting it aside, or by enabling him to recover the title to property which he has parted with by its means. The principle is thus applied in the same manner when the illegality is merely a malum prohibitum, being in contravention to some positive statute, and when it is a malum in se, as being contrary to public policy or to good morals. Among the latter class are agreements and transfers the consideration of which was violation of chastity." 1 Pom. Eq. Juris. sec. 402.

Such authorities might be multiplied indefinitely, nor do we know of any distinction between law and equity in the applicability of the rule. Its real basis is the principal of self-defense as applied to the state. Its courts cannot be used to enforce contracts which strike down its laws and corrupt its people. "If the object of the agreement is to induce immorality, no technical nicety in the instrument, or stipulation of moneyed consideration, or form of deed or writing can give it validity. Such agreements are void in toto." 13 C. J., p. 460, sec. 402.

Speaking on this subject a century ago the Supreme Court of New Hampshire said: "The principle, that no court shall aid men, who found their cause of action upon illegal acts, is not only a well settled, but a most salutary principle. It is fit and proper, that those who make claims, which rest upon violations of the law should have no right to be assisted by a court of justice. It is fit and proper, that courts should refuse their aid to those who seek to obtain the fruits of an unlawful bargain. It is fit and proper, when parties come into court to litigate claims founded upon illegal contracts, in relation to which they stand in pari delicto, that they

should be viewed and treated in those transactions as outlaws, who have forfeited the protection of the law; and it is fit and proper, that they should be left to adjust their unlawful concerns as they can, and enjoy the fruits of their transgressions of the law as they may." *Roby v. West, et al.*, 4 N. H. 285, 290 (17 Am. Dec. 423).

"An agreement for future (illegal) cohabitation is not only void but unlawful and taints with leprosy every transaction into which it enters, * * *. It makes no difference that she in fact did not afterwards cohabit with Crawford. It is the making as well as the performance of such agreement, that the law abhors." *Crawford v. Gordon*, 9 Oh. Dec. (Reprint) 160.

It is further urged that all such defenses are personal to the endorser, and as Couch is not a party to this action the character of the consideration for the assignment from him to Baker cannot be considered. To support that position the following authorities are cited. *Walsh v. Allen*, 6 Colo. App. 303, 40 Pac. 473; *Welch v. Mayer*, 4 Colo. App. 440, 36 Pac. 613; *Robinson Reduction Co. v. Johnson*, 10 Colo. App. 135, 50 Pac. 215; *Statton v. Stone*, 15 Colo. App. 237, 61 Pac. 481; *Sykes v. Kruse*, 49 Colo. 560, 113 Pac. 1013; *Asiatic Tunnel Co. v. Stephenson*, 63 Colo. 301, 165 Pac. 773.

In the first of these cases it was held that the alleged illegal consideration was not proved. In each of the others the existence, not the character, of the consideration was involved. Counsel confuse the question of want of consideration for assignment, or such consideration therefor as is personal to the parties, with considerations which are against public policy, by reason whereof the courts can give no aid without self stultification. It would indeed be an anomaly if, having refused aid to Couch to recover notes which he assigned for an immoral consideration, we should now aid the assignee to collect, winking at, or forgetting, the basis of her title. It is immaterial that she now proceeds against a different defendant, and we are not concerned with the reason given

for the judgment entered against her. Once the true basis of her claim appears public policy demands its dismissal.

Were it true that the authorities cited by counsel support the reverse of the rule now followed this would still be no new law in this jurisdiction. Where decisions are conflicting the latest governs. Our latest pronouncement on this subject was in *Baker v. Couch, supra,* involving the identical notes, consideration and party. We there said: "It is unnecessary, in this jurisdiction, that such a condition of affairs be pleaded. Where the contract or transaction in question is illegal, fraudulent or immoral, and there is mutual misconduct of the parties with respect thereto, neither law nor equity will aid either to enforce, revoke or rescind. To such disputes the courts will not listen and the parties thereto they will leave in the exact position in which they have placed themselves. It is immaterial whether information of such illegality comes from plaintiff or defendant, or is disclosed by pleadings or evidence."

The courts of Colorado are closed against any attempt on the part of either Baker or Couch to obtain any relief from this assignment or establish any rights growing out of it.

Since this case was finally submitted here one Beulah Caudle has asked that she be made a party on the ground that she is the owner of a one-half interest in the notes in question. Whatever her rights they are not here adjudicated, and we know of no rule which would justify the entry of the order sought. It is therefore refused.

The supersedeas is denied and the cause remanded with directions to dismiss at plaintiff's costs.

All the justices concur.